**SO ORDERED.**

**SIGNED this 26th day of May, 2023.**



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use but not print publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

Randall S. Kern
Kristina L. Kern,

                Debtors.

Case No. 22-40437-12

**Memorandum Opinion and Order
Granting in Part Debtors' Limited Objection to Claim No. 14**

This matter is before the court on Debtors' Limited Objection to Claim No. 14 filed by Burlington Veterinary Center, Inc.[1] Debtors Randall and Kristina Kern (collectively "Debtors") appear through counsel, Tom R. Barnes II of Stumbo Hanson, LLP. Burlington Veterinary Center, Inc. ("Burlington") appears through counsel, Bryan K. Joy of Joy Law Office, P.A. Frontier Farm

---

[1] Doc. 90.

Credit, FLCA and Frontier Farm Credit, PCA (collectively "Frontier") appear through counsel, Nicholas R. Grillot of Hinkle Law Firm, LLC.[2]

Burlington's proof of claim ("POC") is based on two separate debts[3] – Debt A and Debt B. Debt A includes an unsecured debt in the amount of $16,985.39.[4] The basis of this debt is a bill for medications provided to third-party cattle pastured on Debtors' land, that was later converted to a judgment in the District Court of Coffey County, Kansas, case no. 2022-LM-000036. Debt B includes an unsecured debt in the amount of $1,526.92, together with a secured debt in the amount of $18,714.83. The basis of this debt is care and treatment rendered to Debtors' cattle. The secured portion is subject to an asserted statutory veterinary lien, the value of which is equal to the proceeds from the sale of Debtors' cattle.

Debtors assert Burlington's claim should be denied in part because Debt A should not exceed $15,872.75[5] and Debt B is not valid. Debtors further argue that pre-petition livestock proceeds from the sale of their cattle, currently held by the Coffey County District Court, should be released to Frontier, pursuant to its first-priority lien.

---

[2] Frontier is Debtors' secured creditor, who maintains a previously perfected security interest in the pre-petition livestock proceeds at issue here.
[3] For clarity purposes, the Court has identified these two debts as Debt A and Debt B.
[4] This value includes Burlington's bill dated January 1, 2022 in the amount of $15,872.75, plus interest.
[5] Debtors admit they owe this amount to Burlington.

2

The allowance or disallowance of a claim against the estate, as well as the determination of the validity and priority of liens, are core proceedings over which this Court may exercise subject-matter jurisdiction.[6] Additionally, the parties stipulate to the jurisdiction of the Court; therefore, jurisdiction is appropriate.

## I. Background and Procedural History

The following facts are not disputed. Until February 2022, Debtors pastured cattle for third parties. During Debtors' possession of the third-party cattle, Burlington provided medications for the cattle. The debt for these medications is referred to as "Debt A." Debtors intended to pay Debt A out of the proceeds they were to receive for pasturing the third-party cattle. However, after shipping the third-party cattle, at the direction of the owner, the third-party's check was dishonored, leaving Debtors unable to pay Debt A.

On April 2, 2022,[7] certain of Debtors' cattle came into the possession of Burlington.[8] Both parties dispute how possession came to be and whether the care and treatment provided to the cattle was authorized by Debtors or a lawful possessor. Burlington cared for the cattle from April 2 until June 13.

---

[6] 28 U.S.C. § 157(b)(2)(B), (K).
[7] Unless otherwise indicated, all other dates in this Opinion occurred in 2022.
[8] The cattle consisted of 8 cow/calf pairs, 1 third stage bred cow, 9 mixed heifer and steer yearlings, and 1 adult bull, totaling 27 head of cattle.

3

On April 6, Burlington filed a Limited Action Petition against Randall Kern (individually "Debtor") in the District Court of Coffey County, Kansas.[9] The action was for payment owed to Burlington for Debt A, plus pre-petition interest, totaling $16,406.15. Debtor was served with the corresponding Summons on April 16. On May 9, the Magistrate Judge entered a default judgment in favor of Burlington. Nine days later, Burlington filed a Writ of Execution.[10]

On May 24, Burlington filed a veterinary lien with the Coffey County Register of Deeds, based upon the care and treatment provided to the cattle that came into its possession on April 2. A copy of the lien was postmarked to Debtor the next day and was also printed in the Coffey County Republican newspaper on May 26. Frontier then intervened in the Coffey County case, claiming a first-priority lien on the cattle.

On June 13, the cattle allegedly subject to Burlington's veterinary lien were sold by the Coffey County Sheriff, pursuant to a Writ of Execution.[11] The sale brought $18,714.83, which was deposited into the Coffey County District

---

[9] Case No. 2022-LM-000036.
[10] Burlington acknowledged at trial that the Writ of Execution was improperly filed prior to the 14-day stay. *See* Kan. Stat. Ann. § 61-3601; Kan. Stat. Ann. § 60-262(a). However, Burlington argues that Frontier waived the deficiency and told Burlington to proceed with the sale. Frontier disputes that they waived any rights, but acknowledge agreeing the cattle could be sold.
[11] The Writ was executed upon the livestock under the limited action judgment in Coffey County District Court. As the parties presented no evidence on the legality of the execution under the limited action, the Court makes no finding on this matter.

4

Court. Burlington filed a motion for payout of the sale proceeds on June 21. A copy of this motion was postmarked to Debtor the next day. Frontier responded to the motion, arguing that the way Burlington sought to assert its lien violated Frontier's properly perfected security interest. The state court held an evidentiary hearing on the distribution motion and took the matter under advisement.

On July 28, before the Coffey County District Court could rule on the distribution of the cattle proceeds, Debtors filed their Chapter 12 bankruptcy petition.[12] In their petition, Debtors scheduled, among other debt, $15,872.75 as a disputed secured debt to Burlington.

On September 6, Burlington moved for relief from stay under 11 U.S.C. § 362(a), requesting to proceed in rem in Coffey County District Court to resolve the competing claims to the proceeds from the prepetition sheriff's sale.[13] Debtors objected to this Motion,[14] and Frontier also responded.[15] A hearing was held on October 11, and an order was entered October 20, denying the Motion.[16]

---

[12] Doc. 1.
[13] Doc. 43.
[14] Doc. 51.
[15] Doc. 52.
[16] Doc. 61.

5

Burlington timely filed a POC for a total of $37,227.14.[17] Debtors object to Burlington's POC,[18] arguing Burlington's claim should be denied in part because Debt A should not exceed $15,872.75 and Debt B is not valid. Debtors further argue that the pre-petition livestock proceeds should be released to Frontier.

## II. Testimony

On March 23, 2023, this Court held a trial where the parties presented evidence and arguments concerning Debtors' objection to Burlington's POC. The issues argued were the validity of Burlington's veterinary lien and the resolution of the competing claims to the proceeds from the pre-petition sheriff's sale.[19] In the Pretrial Order, the parties stipulated that Frontier has a valid, perfected lien in the cattle and the cattle proceeds, and that if the Court finds Burlington's veterinary lien invalid, Frontier has a first priority lien against the proceeds.[20] At trial, the parties further stipulated that if the Court finds Burlington's veterinary lien valid, it is prior to that of Frontier.

---

[17] This sum consists of Debt A in the amount of $16,985.39 and Debt B in the amount of $20,241.75.
[18] Doc. 90.
[19] Although Debtors' counsel articulated an additional issue concerning the legality of the execution on the livestock under the limited action, no evidence was presented on this matter. Therefore, the Court makes no finding on this matter.
[20] Doc. 138.

6

Burlington, through its owner and sole veterinarian, Michael C. Thorp, DVM ("Thorp"), testified that on April 2, an unidentified person brought 27 head of cattle to Burlington's facility. Thorp described the unknown individual as a pleasant cowboy type with a medium build. Thorp claimed that the individual identified the cattle as belonging to Debtor and gave Thorp verbal instructions for treatment. Thorp stated that it is not uncommon for unknown individuals to drop off cattle, but that he usually recognizes the equipment. Thorp testified that on April 2, he recognized the truck and trailer the individual was driving as being that of the Debtor.[21] On the other hand, Thorp testified that there were no markings on the cattle to indicate that they belonged to Debtors. However, there is no dispute that the cattle belonged to Debtors.

After treating the cattle per the driver's instructions, Thorp testified that he called Debtor on April 4 and April 5, leaving voice messages that the cattle were ready to be picked up.[22] However, Thorp testified that no one ever contacted Burlington about the cattle.

---

[21] Thorp described the vehicle as a white Dodge flatbed and the trailer as a Gooseneck tarp top triple axle. He stated that the recognition of Debtor's equipment was based on his past visits to Debtors' farm.

[22] Burlington's phone records show phone calls to Debtor on both dates, and the length of both calls are listed as 1:00 minute. Debtor acknowledges having missed calls in his call log, but disputes that Burlington left any voice messages.

7

Debtor testified that neither he, nor anyone at his direction, dropped the cattle off at Burlington. Debtor suggested that, instead, Burlington must have taken the cattle from Debtors' pasture.[23] Debtor testified that the cattle in question were put in his pasture in Yates Center, Kansas in February 2022, at which time his last employee left and returned to Oklahoma. Debtor testified that he did not have any employees working for him at the time the cattle were brought to Burlington. Furthermore, Debtor testified that his truck, similar in description to the one Thorp described as bringing the cattle to Burlington's facility on April 2, was inoperable as the main bearing was out. Debtor further testified that the truck in question would not be able to handle the loaded trailer as Thorp described.[24]

Debtor maintains that he did not find out the cattle were missing until May 17. He testified that after having dinner for his birthday in Ottawa, Kansas Debtors went to their pasture in Yates Center, Kansas to check on the cattle. Upon finding no cattle in their pasture, Debtor called a neighbor to confirm that he did not have the cattle. On May 19, Debtor said he called the sheriff and reported the cattle stolen. Debtor testified that he later found out from the

---

[23] This suggestion seems to be conclusory – if Debtor did not deliver the cattle, Burlington must have taken them. No evidence is proffered to substantiate this theory.

[24] This suggestion is disputed by Thorp's testimony that Debtor had previously hauled bulls to Burlington's clinic in the white Dodge truck.

Coffey County Sheriff that Burlington had the cattle. Debtor stated that he passed that information on to his attorney and did not inquire further of the cattle. Debtor emphasized that Frontier, who held the first-priority lien, had intervened in the Coffey County lawsuit, and told Debtor to let the cattle be sold.[25]

## III. Analysis

### A. Burden of Proof

The parties do not dispute who has the burden of proof on Debtors' objection to the POC. Pursuant to the bankruptcy rule governing proofs of claim, properly filed claims are entitled to a presumption of validity.[26] The claim is deemed allowed, absent objection.[27] For an objecting party to refute the presumption, the party must present evidence to establish that an actual dispute exists.[28] If the presumption is successfully refuted, the burden is thereafter shifted to the claimant.[29] The burden of persuasion then rests with the claimant to prove the validity and amount of the claim by a preponderance of the evidence.[30]

---

[25] This contention was not disputed by Frontier.
[26] Fed. R. Bankr. P. 3001(f).
[27] 11 U.S.C. § 502(a).
[28] *In re Penaran*, 424 B.R. 868, 875 (Bankr. D. Kan. 2010).
[29] *Id.*
[30] *In re Kopp*, 374 B.R. 842, 845 (Bankr. D. Kan. 2007).

**B. Debt A**

Burlington's claim for Debt A is the amount owed on the date of filing to satisfy the judgment entered against Debtor in Coffey County District Court, in the amount of $16,406.15, plus interest. As stated above, Burlington's claim is entitled to a presumption of validity unless Debtors presented evidence to establish that an actual controversy exits.

Debtors object to the claim to the extent it exceeds $15,872.75. Debtor acknowledged during his testimony that $15,872.75 is the invoice amount for Debt A, which he admits owing, and is the value of the underlying obligation prayed for in the Coffey County Petition. In addition, Debtor presented no legal authorities and produced no evidence or testimony challenging Debtor's liability for pre-petition or post-judgment interest. The Court therefore finds that Debtors failed to establish the existence of a controversy as to the amount owed for Debt A, thereby waiving his objection. Accordingly, the Court denies the objection to the claim for the Debt A amount.[31]

---

[31] Although none of the parties raised the issue, if Debtor had shown a controversy, the doctrine of issue preclusion would require this Court to give preclusive effect to the state court judgment. Under the Full Faith and Credit statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would have been given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The judgment for the $15,872.75 invoice, plus interest, was entered against Debtor by the Kansas District Court. Under Kansas law, issue preclusion prevents relitigation of an issue between the same parties. *In re Application of Fleet for Relief from a Tax Grievance in Shawnee Cnty.*, 293 Kan. 768, 778, 272 P.3d 583, 589–90 (2012).

**C. Debt B**

The validity of the Debt B portion of Burlington's claim rests upon the legitimacy of the veterinary lien filed in the Coffey County Register of Deeds on May 24, 2022.[32] Pursuant to the parties' pretrial stipulation, if the Court finds Burlington's veterinary lien invalid, Frontier holds the first-priority lien in the pre-petition cattle proceeds. Kan. Stat. Ann. § 47-836 provides for a statutory veterinary lien:

> A veterinarian, a veterinary partnership or a veterinary corporation offering veterinary service to animals in the field or otherwise, who shall, at the request of the owner or lawful possessor of any animal or animals, bestow any professional attention, care, vaccines, antisera, virus, antibiotics, or other medical treatment, food or service upon the same shall have a lien upon such animal or animals for the just and reasonable charges therefor, and may hold and retain possession of such animal until such charges are paid, but such lien shall be valid if the veterinarian recorded a verified notice of the lien upon such animal or animals in the office of the register of deeds in the county in which such veterinary services were rendered prior to the expiration of 60 days after such services were rendered. The possessory lien hereby created shall have preference over any and all other liens or encumbrances upon such animal or animals, regardless of where such veterinary service has been rendered.[33]

Here, it is not disputed that Burlington came into possession of Debtors' cattle on April 2, and treatment was purportedly rendered on April 4. On May

---

[32] Burlington defends its position based only on the validity of the veterinary lien. It does not argue that if the Court finds the lien to be invalid, that the Debt B portion of its POC should be found to be unsecured.

[33] Kan. Stat. Ann. § 47-836.

24, within the statutorily required sixty days, Burlington filed a Notice of Veterinarian's Lien. While Debtors hint at doubts about the validity of the June 14 invoice for services provided by Burlington, Debtors only directly challenge that the veterinary services rendered to the cattle were at the request of the owner or lawful possessor.

To refute the presumptive validity of Burlington's POC, Debtor countered Burlington's claims by testifying that he did not have any employees on the date the cattle were delivered to Burlington. Furthermore, the truck that was purportedly used to deliver the cattle to Burlington was allegedly out of commission in Linn County on the date in question. No evidence was proffered to support this claim. Debtor also testified as to the inability of his truck to pull the triple axle trailer in question. While the Court finds both witnesses' testimony somewhat credible, the questions of who delivered the cattle to Burlington and whether care was authorized by Debtors or a lawful possessor, are still not clear. Therefore, the Court finds that Debtors presented enough evidence to support that an actual dispute exists.

To meet the shifted burden, Burlington must prove by a preponderance of the evidence that Debtors, or a lawful possessor of the cattle, requested care and treatment of the cattle. While both witnesses' stories are possible, both provide more questions than answers. The cattle driver remains unidentified.

12

The equipment used to haul the cattle was supposedly in Linn County. And, the cattle that were delivered had no markings to indicate that they belonged to Debtors.

While Burlington provided phone records that show calls to Debtor on April 4 and April 5, the purpose for the phone calls is questionable and unclear. Frontier questioned Burlington on whether the phone calls were made for collection of Debt A, since no other phone calls were made to Debtor after April 5; and the next day, Burlington filed their limited action against Debtor in state court. Thorp responded that the collection action was already in his attorney's hands and the date of filing had nothing to do with the phone calls. Frontier then questioned whether someone who is getting ready to sue would take on additional work, which they are not guaranteed to be paid for. Thorp answered that he still expected to be paid on Debt A, so he had no problem taking on more cattle.

Burlington then argued that Debtor made no action to retrieve the cattle. However, Debtor countered that he was not even aware of the missing cattle until nearly a month and a half later. Debtor testified that when he learned of the missing cattle, he turned the information over to his attorney, who in turn notified Frontier, and was told to let the cattle be sold.

13

During Burlington's closing statement, counsel said, "As far as Dr. Thorp is concerned, a lawful possessor of those cattle delivered those to him." Unfortunately, Burlington's discernment of lawful possessor did not meet the requisite level of proof needed to authorize the vet services. With more questions than answers, the Court finds that Burlington did not meet its burden of persuasion by a preponderance of the evidence.

**IV. Conclusion**

The Court finds that Burlington is entitled to payment of Debt A – its Coffey County judgment for $16,406.15 plus interest thereon at 1.5% per month accruing until the filing date of Debtors' bankruptcy, and for court costs of $120.25 and service of process fee of $15.00. The Court further finds that Burlington failed to meet its burden of persuasion as to the validity of Debt B, and grants Debtors' limited objection as to that portion of Burlington's POC. Pursuant to the parties' pretrial stipulation,[34] since the Court finds Burlington's veterinary lien to be invalid, the Court awards to Frontier the pre-petition livestock proceeds that are currently held by the District Court of Coffey County, Kansas.[35]

**It is so Ordered.**

# # #

---

[34] *See* Doc. 138.
[35] Case no. 2022-LM-000036.